IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SECURE US, INC.,

    Plaintiff/
    Counter-Defendant,

v.                          Miscellaneous Action No. 5:11MC20
                                                (STAMP)
SECURITY ALARM FINANCING
ENTERPRISES, INC.,

    Defendant/
    Counter-Plaintiff,

MILAN PUSKAR AMENDED AND
RESTATED REVOCABLE TRUST
DATED DECEMBER 29, 2006,

    Intervenor.

**MEMORANDUM OPINION AND ORDER
AFFIRMING ORDER GRANTING MOTION
FOR SALE OF CUSTOMER ACCOUNTS,
OVERRULING OBJECTIONS TO ORDER GRANTING
MOTION FOR SALE OF CUSTOMER ACCOUNTS,
DENYING EXPEDITED MOTION TO STAY AND
DIRECTING SALE OF CUSTOMER ACCOUNTS TO PROCEED**

I. Background

On August 15, 2011, Secure Alarm Financing Enterprises, Inc. ("SAFE") filed a motion for issuance of a writ of fieri facias in this Court so that it could execute a money judgment that was entered against Secure US, Inc. ("Secure US") in the amount of $1,132,028.42 in the United States District Court for the Southern District of West Virginia. On August 16, 2011, this Court issued an order granting the motion for issuance of a writ of fieri facias and appointing United States Magistrate Judge James E. Seibert as

the officer who shall be commanded to seize and sell the property of Secure US in order to satisfy the judgment entered against it.

SAFE filed a motion for sale of customer accounts on December 7, 2011, in which it requested that the magistrate judge conduct a sale of Secure US's customer accounts in conjunction with the writ of fieri facias. On December 21, 2011, Secure US filed a response in opposition to SAFE's motion for sale of customer accounts arguing that SAFE, as a judgment creditor, is not the primary holder of Secure US's assets. On December 22, 2011, the Milan Puskar Amended and Restated Revocable Trust dated December 29, 2006 ("Trust") filed a motion to intervene as a matter of right and response to SAFE's motion for sale of customer's accounts. The Trust argued that all of Secure US's personal property is subject to existing, perfected, superior liens, and the Trust moved to intervene in order to protect its right to the collateral for its loans to Secure US. The magistrate judge granted the motion to intervene on February 2, 2012.

On January 20, 2012, SAFE filed a reply in support of its motion for sale of customer accounts. Subsequently, the Trust filed a sur-reply to SAFE's motion for sale of customer accounts. On February 3, 2012, the parties appeared before Magistrate Judge Seibert for an evidentiary hearing on the motion for order of sale of customer accounts. On March 14, 2012, the magistrate judge issued an order granting the motion for sale of customer accounts and scheduling the sale to occur at 9:30 a.m. on Monday, April 16,

2012 at the Wheeling point of holding court.  Magistrate Judge Seibert concluded that the Trust could not block SAFE's rights as a judgment creditor to execute on Secure US's assets.  In his order, the magistrate judge stated that any party could file objections to his order on or before March 28, 2012.

On March 28, 2012, both Secure US and the Trust filed objections to the magistrate judge's order.  Secure US argues that the order is contradictory to the principle of equity because it allows SAFE to destroy assets in an auction that does not benefit any of the parties involved.  The Trust argues that a junior lienholder cannot force the sale of property that is fully encumbered by a senior security interest.  The Trust also moved to stay the April 16, 2012 sale of Secure US's customer accounts.

On March 30, 2012, this Court issued an order directing SAFE to respond to the objections.  On April 6, 2012, SAFE filed a response to Secure US's objections and a response to the Trust's objections.  On April 9, 2012, the Trust filed a reply in support of its objections.[1]  For the reasons set forth below, this Court finds that the order granting the motion for sale of customer accounts must be affirmed, the objections to the magistrate judge's order granting the motion for sale of customer accounts must be

---

[1]This Court's March 30, 2012 order directing SAFE to respond to the objections did not provide for a reply by the Trust. However, this Court has reviewed the Trust's reply and finds that it does not change this Court's determination that the objections to the magistrate judge's order must be overruled.

3

overruled, the expedited motion to stay must be denied, and the sale of the customer accounts must proceed.

## II. Applicable Law

Title 28, United States Code, Section 636(b)(3) provides that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." See also LR Civ P 72.01 (stating that a magistrate judge of this district is designating to perform, and may be assigned, any duty allowed by law to be performed by a magistrate judge). This "additional duties" clause of § 636 does not provide a statutorily defined standard of review. However, because "orders relating to postjudgment execution . . . are more analogous to non-dispositive pretrial discovery dispositions," this Court applies the "clearly erroneous" standard of review to the magistrate judge's order. Fuddruckers, Inc. v. KCOB I, L.L.C., 31 F. Supp. 2d 1274, 1276 n.1 (D. Kan. 1998).

The Trust argues in its objections that Magistrate Judge Seibert was not authorized to issue his order, but should have instead submitted proposed findings of fact and recommendations to the undersigned judge pursuant to 28 U.S.C. § 636(b)(1). According to the Trust, this Court should construe the magistrate judge's order as proposed findings and recommendations and conduct a de novo review of the Trust's objections. Even if this Court were to construe the March 14, 2012 order as a report and recommendation subject to de novo review, the more stringent standard of review

4

would not change this Court's determination that the magistrate judge's order must be affirmed, and the objections overruled.

### III. Discussion

In his order granting the motion for sale of customer accounts, the magistrate judge delineates four findings of fact and conclusions of law: (1) SAFE is a junior lienholder and the Trust is a senior lienholder; (2) If the property is executed on and sold, the buyer will take the property subject to the senior lien; (3) The value of Secure US in a non-distressed situation is $3,710,000.00. The value of Secure US in a distressed situation is $2,590,000.00; and (4) A senior secured interest does not bar a junior creditor from enforcing his or her rights. Both Secure US and the Trust agree with the first three factual findings of the magistrate judge, but object to the fourth conclusion of law. Thus, in reviewing the magistrate judge's order and objections, this Court focuses on whether the Trust's senior secured interest bars SAFE from enforcing its rights as a junior creditor.

In his order granting the motion for sale of customer accounts, the magistrate judge concluded that the Trust could not obstruct the sale, stating that friendly secured creditors such as the Trust could not shelter their debtors by preventing other creditors from exercising valid liens. In its objections, Secure US argues that SAFE seeks to destroy Secure US's remaining value by purposefully choosing to auction its most valuable assets. Secure US emphasizes that the auction of its customer accounts will not

benefit any of the parties involved, but will only prevent the company from being sold as a "going concern" and damage the position of the senior lienholder, the Trust.  In order to prevent this unjust result, Secure US argues that this Court should apply the principle of marshaling.  Marshaling, Secure US contends, would equitably protect both creditors' interests.  The Trust asserts a similar argument in its objections, alleging that the magistrate judge's order fails to comport with traditional notions of equity because the judicial sale of the customer accounts will result in no proceeds for SAFE and because the collateral for the Trust's loans will be destroyed.

In its response to Secure US's objections, SAFE argues that because Secure US did not raise the equitable principle of marshaling prior to or during the evidentiary hearing before the magistrate judge, it waived the issue.  Importantly, Secure US acknowledges in its objections that the principle of marshaling was not considered by the magistrate judge.  As stated by SAFE, "[i]t is well established that issues raised for the first time in objections to the Magistrate Judge's recommendations are deemed waived." Collins v. United States, No. 1:06-0490, 2009 WL 31867292 (S.D. W. Va. Sept. 30, 2009) (quoting Salinas v. Cartildge, No. 4:07-4149, 2009 WL 438006, at *1 (D.S.C. Feb. 20, 2009)). Although Secure US improperly raises the issue of marshaling for the first time in objections, this Court considers the argument and finds

that the doctrine does not prevent SAFE from pursuing a forced judicial sale of Secure US's customer accounts.

As Secure US acknowledges, the doctrine of marshaling of assets developed as an equitable principle to benefit junior secured creditors by preventing "the arbitrary action of a senior lienor from destroying rights of a junior lienor or a creditor having less security." Meyer v. United States, 375 U.S. 233, 237 (1963); Harrold's Hatchery and Poultry Farms, Inc. v. First Nat'l Bank of Athens, 17 B.R. 712, 715-16 (Bankr. M.D. Ga. 1982) ("[Marshaling] is designed to protect junior lienholders from the destruction of their interests by the arbitrary application of collateral to the indebtedness of a senior lienholder."). The United States Court of Appeals for the Fifth Circuit has held that the doctrine of marshaling assets applies only to the case of a junior lienholder who seeks to compel a senior lienholder to exhaust security. Sowell v. Fed. Reserve Bank, 294 F. 798, 801 (5th Cir. 1923). "The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not by his application of them to his demand defeat another creditor who can resort to only one of the funds." Harrold's Hatchery and Poultry Farms, Inc., 17 B.R. at 716.

This Court finds that the doctrine of marshaling, which is designed to protect junior lienholders, is inapplicable in a case such as this where the senior lienholder seeks to prevent a junior creditor from executing on the debtor's assets. This Court finds

that because SAFE, the junior lienholder, has a secured claim against only one asset, the customer accounts, the doctrine of marshaling cannot be invoked to undermine its right to sell this asset if the senior creditor has not elected to do so.

Next, Secure US objects to the magistrate judge's order on the basis that the notice prescribed by the order is deficient, failing to properly advertise the assets in a commercially reasonable manner as intended by the West Virginia Code. Specifically, Secure US argues that the publication of the notice in the Wheeling newspaper was improper because the debtor has no connections or businesses in the Wheeling area. Further, Secure US argues that the notice fails to identify that the sale is subject to the Trust's lien. Secure US also contends that the magistrate judge improperly relies upon West Virginia Code § 38-4-20 rather than the Uniform Commercial Code for the sale of commercial property.[2] Finally, Secure US asserts its right under § 38-4-22 for an appraisal of the property prior to the sale.

West Virginia Code § 38-4-20, which sets forth the requirements of a notice of a judicial sale of assets, provides:

> In any case where an officer shall distrain or levy upon personal property, otherwise than under an execution or order issued by a justice, or under an attachment, and in any case in which he may be directed to sell personal property by an order of a court or judge, unless such

---

[2]Secure US cites no case law in support of its argument that the magistrate judge should follow the Uniform Commercial Code for the sale of commercial property with regard to the notice requirements, nor does it provide a citation to the appropriate section of the West Virginia Uniform Commercial Code.

> order prescribes a different course, he shall fix upon a time and place for the sale thereof, and publish notice of such sale at least ten days by posting the same at the door of the courthouse of his county and some other conspicuous place near the residence of the owner, if he resides in the county: Provided, that any sheriff or other officer proceeding to sell under a writ of fieri facias or venditioni exponas, if the property be of the value of five hundred dollars or more, shall advertise the sale as a Class II-0 legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this Code, and the publication area for such publication shall be the county.

W. Va. Code § 38-4-20. This Court finds that the notice of the sale prescribed by the magistrate judge's order is sufficient. First, the order sets forth the time and place of the sale. Second, the order directs SAFE to publish a notice of sale of customer accounts of Secure US, Inc. as a Class II-0 legal advertisement in either the Wheeling News-Register or the Wheeling Intelligencer.[3] The magistrate judge's order also states that SAFE, Secure US, and the Trust must, at their individual expense, publish the sale in their sole and absolute discretion in any manner in any media. Thus, any error in the notice of the sale is harmless because all three parties were given the opportunity to publish in any manner in any media. Secure US erroneously asserts that the notice is deficient because it does not state that the sale is subject to the Trust's lien. However, § 38-4-20 does not require a description of the property. Moreover, the notice of sale of customer accounts informs potential buyers that a copy of

---

[3]The publication area of both the Wheeling News-Register and the Wheeling Intelligencer is Ohio County, the county of the magistrate judge -- the officer selling the personal property.

9

Secure US's accounts is available for inspection in the Clerk's Office. With regard to Secure US's request for an appraisal, this Court finds that because the customer accounts have already been appraised by an expert retained by Secure US, the request must be denied.

In addition to its argument that equity prohibits the act of selling the customer accounts which will result in no benefit to SAFE, the Trust also argues in its objections that SAFE's motion to sell is moot because it will result in no recovery for SAFE. According to the Trust, SAFE has no stake in the sale of the customer accounts because it will receive no proceeds from the sale. The Trust also objects to the magistrate judge's reliance on Frierson v. United Farm Agency, Inc., 868 F.2d 302 (8th Cir. 1989), claiming that it is distinguishable from the instant case because it did not involve a judicial sale of assets subject to a senior lien which would result in no payment to the judgment creditor.

In response, SAFE argues that the motion to sell the customer accounts is not moot because SAFE has a cognizable interest in exercising its valid lien. Further, SAFE contends that the motion is not moot because SAFE will receive all of the proceeds from the sale of Secure US's customer accounts. SAFE notes that it is undisputed that the Trust did nothing to declare Secure US in default and pursue any rights to seize and sell the customer accounts. For this reason, SAFE asserts that the Trust does not have the present right to the customer accounts or the proceeds of

their sale.  Instead, SAFE claims that it is entitled to those proceeds.

This Court agrees with the magistrate judge's determination that the Trust cannot prevent SAFE from exercising its right as a judgment creditor to execute on Secure US's assets.  In this case, the Trust has not pursued its right or claim to any of the proceeds resulting from a sale of Secure US's customer accounts.  See Frierson, 868 F.2d at 305 (stating that a merchant cannot refuse to exercise its rights under the security agreement while it impairs the status of other creditors by preventing them from exercising valid liens); Bank of Hawaii v. DeYoung, 992 P.2d 42, 50 (Haw. 2000) ("[A] secured creditor may not dissolve enforcement proceedings by a judgment creditor against a common debtor where the secured party has neither declared its loan in default nor instituted execution of its affirmative remedies under the security agreement."); First Nat'l Bank of Steelville v. Erb Equip. Co., Inc., 921 S.W.2d 57, 64 (Mo. Ct. App. 1996) (stating that the senior lienholder had no right to the sale proceeds because it never attempted to seize the collateral from the debtor).  Thus, this Court concludes that the motion for the sale of Secure US's customer accounts is not moot.

## IV. Conclusion

For the reasons set forth above, this Court AFFIRMS the order granting motion for sale of customer accounts (ECF No. 21), OVERRULES the objections to the magistrate judge's order granting

the motion for sale of customer accounts (ECF Nos. 23 and 24), DENIES the expedited motion to stay (ECF No. 24) and DIRECTS the sale of the customer accounts to proceed at 9:30 a.m. on Monday, April 16, 2012 in the Magistrate Judge Courtroom, United States Courthouse, 1125 Chapline Street, Room 433, Wheeling, West Virginia.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 12, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE